```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
MICHAEL J. FALCO, JR.,                                           :
                                                                 :
                    Plaintiff,                                   :    **DECISION AND ORDER**
                                                                 :
            - against -                                          :    2:04-cv-04540-ENV-WDW
                                                                 :
UNUM PROVIDENT CORPORATION,                                      :
PROVIDENT LIFE AND ACCIDENT                                      :
INSURANCE COMPANY, AND THE PAUL                                  :
REVERE LIFE INSURANCE COMPANY,                                   :
                                                                 :
                    Defendants.                                  :
                                                                 :
-----------------------------------------------------------------X
```

**VITALIANO, D.J.**

Plaintiff Michael J. Falco, Jr. ("Falco") brings this action against Unum Provident Corporation ("Unum"), Provident Life and Accident Insurance Company ("Provident"), and the Paul Revere Life Insurance Company ("Paul Revere") seeking to recover upon two insurance policies issued to him by Paul Revere in 1988 to cover the peril of his total disability. Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, their motion is granted.

## I. BACKGROUND

This action concerns two separate, yet almost identical, total disability insurance policies purchased by Falco[1] from Paul Revere in 1988. Unless otherwise indicated, the following facts are uncontested in the record.

---

[1] Falco, a Long Island businessman, was the chief executive of Shredex, Inc. ("Shredex") a privately-held company that imported and sold paper shredding machines. Although the company apparently flourished during the late 1980s and early 1990s, its fortunes eventually declined. Shredex ceased all operations in 2000. *See* Mercogliano Aff., ¶¶ 6, 12, 15, 16.

Policy number 0102326923 ("Policy 1") was issued to Falco on March 1, 1988. This policy provided for the payment of a monthly indemnity of $5000 to Falco upon the event of his "total disability." "Total disability," in turn, was specifically defined within the policy to mean that "because of Injury or Sickness: a. You are unable to perform the important duties of Your Occupation; and b. You are under the regular and personal care of a Physician." An attached schedule set forth the annual premium Falco was required to pay in order to keep Policy 1 effective, noting that "[i]f the policy is not paid when it is due or within the [31-day] grace period, the Policy will lapse."[2] The "Claims" section of this policy stipulated that "[a]ll losses must occur while Your Policy is in force" and that "[w]ritten notice of claim must be given to Us within 30 days after a covered loss starts, or as soon as reasonably possible." The contract further required that "[w]ritten proof of loss must be sent to Us within 90 days of the end of a period for which You are claiming benefits. If that is not reasonably possible, Your claim will not be affected. But, unless You are legally incapacitated, written proof must be given within one year." Finally, Part 10.4 of the agreement set specific limitations on the time period in which legal actions on Policy 1 could be commenced: "You cannot bring legal action within 60 days from the date written proof of loss is given. You cannot bring it after 3 years from the date written proof of loss is required." Defs.' Rule 56.1 Stmt., Ex. 1.

It is undisputed that, in 1998, Falco failed to submit his annual premium payment as required by the terms of Policy 1. Policy 1, consequently, was deemed lapsed by defendants for nonpayment of premium as of March 1, 1998. Defs.' Rule 56.1 Stmt. ¶ 5; Compl. ¶¶ 8, 13.

---

[2] However, Part 5.1 of the policy provided for a waiver of premiums under limited conditions: "After You have been Disabled for 90 days, We will waive any premium that becomes due while You remain Disabled. Your Policy and its benefits will continue as if the premium had been paid." *See* Defs.' Rule 56.1 Stmt., Ex. 1 at 13.

The record is devoid of any communications between Falco and Paul Revere concerning any potential claims for total disability under Policy 1 during the years it was in effect and for several years after its lapse. In January 2003, however, Falco's friend and attorney, Richard Reisch ("Reisch"), telephoned Unum, Paul Revere's parent company, inquiring as to Falco's eligibility for benefits under Policy 1. This was apparently done in connection with Falco's admission earlier that year to a Long Island hospital for psychiatric treatment. During this conversation, Reisch was informed by an Unum claim representative that no benefits would be payable under Policy 1 since it had lapsed in 1998, several years prior to Falco's initial notice of disability. *See, e.g.,* Defs.' Rule 56.1 Stmt., Ex. 3-4.

Falco, nevertheless, commenced the instant suit in 2004 claiming entitlement to total disability benefits, on a retroactive basis, under Policy 1.[3] Although Falco concedes in his complaint that Policy 1 lapsed for nonpayment of premium in 1998, over six years prior to the commencement of this action, *see* Compl. ¶¶ 8, 13, Falco argues that he should receive total disability benefits under it as a result of an episode of severe depression that he claims first manifested itself in 1994. This depression, Falco further contends, not only rendered him incapable of filing a claim "within the nominal time set out therefore under the terms of the policy" (thus excusing his delay of six years in filing the instant action), *see id.* ¶ 14, but may also have excused him from paying premiums after 1998, in light of Part 5.1 of the policy

---

[3]The present action was originally filed in Nassau County Supreme Court in February 2004, although defendants were not served with a copy of the complaint until September 15, 2004. On October 12, 2004, defendants removed the action to this Court, pursuant to 28 U.S.C. §§ 1441 and 1446, asserting, in conformity with the requirements of 28 U.S.C. § 1332, diversity of citizenship and an amount in controversy of over $75,000 exclusive of costs and interest.

3

providing for waivers of premiums in the event the insured became disabled.[4] As such, Falco argues, defendants owe him retroactive total disability benefits under Policy 1 in the amount of $504,000. *See generally* Compl.; Pl.'s Mem. in Opp. at 5-9.

Falco also asserts claims under a second total disability policy, identified as policy number 0102350264 ("Policy 2"). Policy 2 became effective September 9, 1988. Like Policy 1, Policy 2 initially provided for a monthly indemnity of $5000 to be paid to Falco in the event of his total disability. This indemnity, pursuant to an addendum attached to the contract, increased to $6000 per month as of July 22, 1992. Defs.' Rule 56.1 Stmt, Ex. 6. Otherwise, however, Policy 2's terms and conditions as to the definition of total disability, notice, written proof of loss, and time period in which to bring legal action upon the contract were identical to those of Policy 1. *See* Defs.' Rule 56.1 Stmt., Ex. 5.

Falco continued paying the premium on Policy 2 until 2001, when he notified Unum via telephone of his intention to file a claim for total disability benefits on Policy 2 due to a disabling psychiatric condition. On May 22, 2001, Unum received Falco's written proof of loss. Shortly thereafter, Falco's treating psychiatrist, Dr. Richard Pitch, completed the Attending Physician's Statement certifying that Falco's limitations from his claimed illness began in September 2000, although another physician, Dr. Donald Proferes, later certified that Falco had been, pursuant to the terms of Policy 2, under his regular and personal care for severe depression since May 2000. On July 26, 2001, Unum notified Falco of its determination, based on Dr. Proferes' certification of his medical condition, that Falco was entitled to total disability benefits dating back to May 1,

---

[4]The Court notes that Falco's argument in this regard, which suggests that there is a question of fact as to whether Policy 1 ever lapsed, conflicts with Falco's concession in his complaint that Policy 1 indeed lapsed on March 1, 1998. *Compare* Pl.'s Mem. in Opp. at 5-9 *with* Compl. ¶¶ 8, 13.

4

2000. Falco concedes that Unum has paid him all benefits due and owing under Policy 2 from that date to the present. *See* Defs.' Rule 56.1 Stmt. ¶¶ 25-30.

But, Falco claims he is entitled to more, asserting in the instant action that defendants owe him benefits under Policy 2 for an unspecified period in which he alleges that he was totally disabled prior to Dr. Proferes' certification date of May 1, 2000. In support of this argument, Falco offers evidence that a friend of the family, Dr. Jay Cuti, had prescribed the antidepressant Prozac for him in 1994. Cuti Aff. ¶ 7. Dr. Cuti, in an attachment to his affidavit, also provides CVS pharmacy receipts reflecting that the pharmacy filled this prescription for Prozac on an intermittent basis from November 1994 until April 1996. *See* Cuti Aff., Ex. 1. Falco contends, on the basis of this evidence, that he is entitled to retroactive total disability benefits under Policy 2 for at least a portion of the period between the alleged onset of his disability in late 1994 and May 2000.

Defendants disagree and move for summary judgment. Falco, they assert, is not entitled to any total disability benefits whatsoever under Policy 1 nor to any benefits under Policy 2 prior to May 1, 2000. With regard to Policy 1, defendants argue that Falco's action is time-barred pursuant to § 3211(d) of the New York Insurance Law, which provides that no legal action may be maintained on a lapsed policy of disability insurance unless the action is brought within two years of the date of default. Defendants also assert that Falco is not entitled to any benefits under Policy 1 because he did not a) submit a notice of claim, b) provide written proof of loss, and c) institute his legal action within the relevant limitations periods mandated by the terms of the policy. Additionally, defendants contend that Falco's claims both under Policy 1 and Policy 2 are time-barred pursuant to § 3216(d) of the New York Insurance Law, which requires that all

actions on insurance policies be commenced within three years of the time written proof of loss was required to be furnished. Finally, as an alternative ground upon which this Court may grant summary judgment, defendants note that Falco has not put forth any evidence that he was under the regular and personal care of a physician for any alleged disability prior to May 2000, as is mandated for an insured to be eligible to receive total disability benefits under Section 1.9 of both Policy 1 and Policy 2. *See generally* Defs.' Mem. at 19-20.

## II. DISCUSSION

### A. Standard for Summary Judgment

Under the Federal Rules of Civil Procedure, a district court may grant summary judgment upon finding that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court's responsibility in assessing the merits of a summary judgment motion is thus not to try issues of fact, but rather to "determine whether there *are* issues of fact to be tried." Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995) (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984)). Accordingly, the moving party bears the burden of demonstrating that there is no genuine issue as to any material fact, *see, e.g.*, Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005), and the evidence presented will be construed liberally in favor of the party opposing the motion. *See, e.g.*, Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

Once the moving party has met its initial burden of demonstrating the absence of a disputed issue of material fact, the burden then shifts to the nonmoving party to present "specific

6

facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). However, the non-moving party may not rely solely on "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Thus, if the evidence favoring the nonmoving party is "merely colorable . . . or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## B. Analysis: Policy 1

It is well-established under New York law[5] that in insurance disputes the burden is on the insured to prove all facts necessary to demonstrate that a claim falls within the terms and conditions of coverage. *See, e.g., Continental Assur. Co. v. Sanasee*, 2006 WL 335419, at *2 (E.D.N.Y. Feb. 13, 2006); *Paul Revere Life Ins. Co. v. Bavaro*, 957 F. Supp. 444, 447 (S.D.N.Y. 1997)(both citing *Preferred Accident Ins. Co. of New York v. Grasso*, 186 F.2d 987, 990 (2d Cir. 1951)); *see also Chase Manhattan Bank, N.A. v. Travelers Group, Inc.*, 269 A.D.2d 107, 702 N.Y.S.2d 60, 61 (1st Dep't 2000); *Munzer v. St. Paul Fire & Marine Ins. Co.*, 145 A.D.2d 193, 538 N.Y.S.2d 633, 636 (3rd Dep't 1989). At the threshold, the determination of the meaning of language used in an insurance policy is a question of law for the court. If a provision is "plain and unambiguous, the court's role is simply to enforce the common and ordinary meaning of it." *Bavaro*, 957 F. Supp. at 447.

The words of the insurance contract are, indeed, dispositive of the first claim. As a matter of law, the Court finds that Policy 1 lapsed in 1998 for nonpayment of premium pursuant

---

[5] As the parties agree, New York law controls this dispute about a contract of insurance covering the disability of a New York resident.

7

to its plain and unambiguous terms and conditions. *See* Defs.' Rule 56.1 Stmt., Ex. 1 at 12 (stating that "[i]f the premium is not paid when it is due or within the [31-day] grace period, the Policy will lapse"). Falco, moreover, conceded, at least initially, that Policy 1 lapsed in 1998 for this very reason. Compl. ¶ 13 (stating that "plaintiff [in early 1998] was unable to pay the premium on [Policy 1] which lapsed on or about April 1st, 1998"). More significantly, even if Falco was allowed to retreat from this concession of a lapse based upon proof that he was actually "disabled" as of the date of nonpayment, and, therefore, that Policy 1 did not actually lapse due to the policy's provision for the waiver of any premium that becomes due during disability, *see* Defs.' Rule 56.1 Stmt., Ex. 1 at 13, it would not change the result. For a closer reading of Policy 1 reveals that Falco's interpretation of the language of Policy 1 is fundamentally flawed.

To be specific, Falco's argument ignores the fact that Policy 1 clearly defines the term "disabled," for purposes of the contract, as denoting only "a continuing period of Total and/or Residual Disability." A "total disability," as discussed above, is defined as an injury or sickness due to which an insured is "unable to perform the important duties of [his] [o]ccupation" and is "under the regular and personal care of a Physician." A "residual disability," in turn, denotes a disability that "follow[s] right after a period of Total Disability," and for which, like a total disability, the insured continues to be "under the regular and personal care of a Physician." *See* Defs.' Rule 56.1 Stmt., Ex. 1 at 7.

The problem, of course, is that Falco has provided no evidence of a "total disability" and, therefore, nothing to excuse his failure to remit the required premium on Policy 1 in the spring of 1998. Indeed, even assuming *arguendo* that Falco's occasional conversations with his friend Dr.

Cuti about his marital and business problems as well as Dr. Cuti's ordering of a prescription for Prozac constituted being "under the regular and personal care of a physician" for a serious disability with the meaning of the policy between 1994 and 1996,[6] the Court notes that Falco proffers no evidence that he was receiving any form of medical treatment from Dr. Cuti or anyone else for any condition during the crucial period immediately prior to his failure to submit the required premium in March 1998. The utter lack of any evidence in the record suggesting that Falco was disabled within the explicit terms of the policy on or about the time of his admitted failure to submit the annual premium for Policy 1 in 1998, compels this Court's finding that Policy 1, pursuant to its own clearly-defined terms and conditions, lapsed on April 1, 1998.[7] *See, e.g., Mossa v. Provident Life and Cas. Ins. Co.*, 36 F. Supp. 2d 524, 527 (E.D.N.Y. 1999).

New York law is entirely in harmony with this result. New York Insurance Law § 3211(a) provides, in relevant part:

> No policy of life insurance or non-cancellable disability insurance delivered or issued for delivery in this state . . . shall terminate or lapse by reason of default in payment of any premium, installment, or interest on any policy loan in less than one year after such default, unless a notice shall have been duly mailed at least fifteen and no more than forty-five days prior to the day when such payment becomes due.

This statute has been interpreted to mean that, provided there is sufficient evidence to raise the presumption that cancellation or premium-due notices were delivered to the insured within the

---

[6] The Court notes, though, that even this is a stretch. Dr. Cuti was unable produce any medical records verifying his treatment of Falco during this period. *See generally* Cuti Aff. Moreover, a prescription for Prozac, filled intermittently between late 1994 and early 1996, is evidence only that Falco may have been suffering from a mild depression, a relatively common malady, during the years 1994 to 1996. There is no evidence in the record, more importantly, that this condition was in any way disabling at that time, much less totally disabling.

[7] While Falco's premium was actually due by March 1, 1998, the lapse date of April 1, 1998 includes the 31-day grace period provided for under Part 4.2 of Policy 1.

requisite period, a disability policy will be deemed by a court to have lapsed on the date of the insured's default in paying premiums. *See* Caprino v. Nationwide Mutual Ins. Co., 34 A.D.2d 522, 308 N.Y.S.2d 624 (1st Dep't 1970)(citing De Persia v. Merchants Mut. Cas. Co., 268 A.D. 176, 49 N.Y.S.2d 324 (2d Dep't 1944), *aff'd* 294 N.Y. 708, 61 N.E.2d 449 (1945)). However, in cases in which the insurer neglected to mail a premium-due notice or where there is no evidence of such a mailing, a life insurance or disability policy will be deemed to have lapsed one year from the date the premiums were originally due. *See, e.g.,* Maharan v. Berkshire Life Ins. Co., 110 F. Supp. 2d 217, 220-23 (W.D.N.Y. 2000).

In the instant matter it makes absolutely no difference whether Policy 1 is deemed under New York law to have lapsed on March 1, 1998 or on March 1, 1999. New York Insurance Law § 3211(d) sets a strict two year statute of limitations for policies which have lapsed due to nonpayment of premiums:

> No action shall be maintained to recover on any life insurance policy, or on any such non-cancellable contract of permanent and total disability insurance, which has lapsed because of default in making such payment (except an action to recover the cash surrender value or nonforfeiture benefit) unless the action is instituted within two years from the date of such default.

Accordingly, even assuming that Policy 1 lapsed on the later date provided for under New York law - March 1, 1999 - Falco was required to commence this action by March 1, 2001 at the very latest. Instead, he waited until February 27, 2004 to file it, almost three years after the two year statute of limitations for a lapsed policy had run. As such, even if Falco had a valid claim under

Policy 1, it would be time-barred and must be dismissed as a matter of law.[8]

The Court need not consider any alternative grounds defendants advance in support of their motion for summary judgment as to Policy 1. Defendants are entitled to summary judgment on all claims here arising out of Policy 1.

## C. Analysis: Policy 2

Falco takes a similar tack in arguing that there is a genuine issue of material fact as to whether he is entitled to disability benefits prior to May 1, 2000 under Policy 2. As with Policy 1, Falco asserts that, although he now believes himself to have been totally disabled since at least 1994, his depression rendered him unable to file a claim under Policy 2 until May 2001. Defendants counter that Falco is not entitled to additional benefits under Policy 2 in any event because he did not give, in accordance with the explicit terms of the agreement, a) timely written notice of claim or b) timely written proof of loss. Defendants also point out that Falco has failed to proffer any evidence that he was under the regular and personal care of a doctor for a disability prior to May 1, 2000, the date from which Dr. Proferes provided such certification, as mandated by the terms of that policy.

As an initial matter, the Court observes that Part 9.2 of Policy 2 requires that an insured submit "[w]ritten notice of claim . . . within 30 days after a covered loss starts, or as soon as reasonably possible." Recognizing that no notice within 30 days of the covered loss had been given, Falco argues that a six-year delay in submitting such notice could be construed to be "as

---

[8]Falco, of course, argues that a statute of limitations keyed to lapse is irrelevant because the policy did not lapse at all due to his disability. His argument against finding lapse on this ground, however, is one that is also without merit since, as the Court has already determined, Falco has offered no proof establishing prima facie that he was "totally disabled".

11

soon as reasonably possible" in light of his initial inability, due to the nature of his alleged psychiatric condition, to recognize that he could have been totally disabled as early as November 1994. On this point, he contends, there is a genuine issue of material fact in dispute, precluding summary judgment.

New York law is plain - - compliance with the notice of claim provision of an insurance policy is a foundational condition precedent to maintaining an insured's action on the policy against the insurer. *See, e.g.,* <u>Mercurio v. Northwestern Mut. Ins. Co.</u>, 298 A.D.2d 567, 749 N.Y.S.2d 63, 64 (2d Dep't 2002)(affirming a grant of summary judgment in favor of the insurer where the insured waited over five years to submit notice of claim for an alleged disability). The critical question as to Part 9.2 is thus whether Falco could, on the evidence he submits and as a matter of contractual interpretation, avail himself of the "as soon as reasonably possible" provision. While this is a highly questionable proposition under the governing law, *see id.* and <u>Security Mut. Ins. Co. of New York v. Acker-Fitzsimons Corp.</u>, 31 N.Y.2d 436, 293 N.E.2d 76 (1972)(finding a 19-month delay in giving initial notice unreasonable, thus vitiating the policy), the Court need not reach it. For, even assuming *arguendo* that six years could constitute a reasonable period in which to give notice of loss, unequivocally fatal to Falco's claim is yet another notice provision of Policy 2 - - Part 9.4.

Part 9.4 expressly requires that "[w]ritten proof of loss . . . be sent to Us within 90 days of the end of a period in which You are claiming benefits. If that is not reasonably possible, Your claim will not be affected. But, unless You are legally incapacitated, written proof must be given within one year." Defs.' Rule 56.1 Stmt., Ex. 1. Since Falco concedes that he did not submit

written proof of loss for any period[9] covered under Policy 2 until May 22, 2001 yet seeks benefits for more than a year prior, that is, beginning November 1994 through May 2000, he cannot succeed without offering prima facie evidence that he was "legally incapacitated" within the meaning of the policy.

Falco correctly points out that Policy 2 did not specifically define the term "legally incapacitated." The absence of definition does not mean, however, that either side is free to declare the term unilaterally. An insurance contract must be read as a whole to determine what the parties reasonably intended by its terms. <u>Newmont Mines, Ltd. v. Hanover Ins. Co.</u>, 784 F.2d 127, 135 (2d Cir. 1986). To that end, "[n]o construction of a . . . provision is permitted that is inconsistent with the contract's plain meaning or with the parties' clear intentions . . . . To disregard express language in an insurance contract because of a claimed ambiguity would violate the more fundamental rule of construction that requires a court to construe the contract as a whole, and whenever possible to give effect to all of its parts")(internal citations omitted). <u>American Home Prods. Corp. v. Liberty Mut. Ins. Co.</u>, 565 F.Supp 1485, 1492 (S.D.N.Y. 1983); *see also* <u>Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.</u>, 84 F.3d 91, 99 (2d Cir. 1996). Accordingly, "when interpreting terms in insurance policies, [courts] are to construe the language at issue as would the ordinary [person] on the street or ordinary person when he [or she] purchases and pays for insurance . . . ." <u>First Investors Corp. v. Liberty Mutual Ins. Co.</u>, 152 F.3d 162, 167 (2d Cir. 1998)(citing <u>Michaels v. City of Buffalo</u>, 85 N.Y.2d 754, 757, 628 N.Y.S.2d 252, 651 N.E.2d 1272 (1995)).

Here, an "ordinary person" purchasing a total disability policy would, and should,

---

[9]Under Part 9.6 of Policy 2, periods for which benefits are to be paid are measured in 30-day increments.

13

certainly have understood the insurer's insertion of the term "legally incapacitated" into the contract as establishing a requirement that the insured might very well need to prove the existence of a condition completely unrelated to the condition which allegedly rendered the insured "totally disabled" in order to be excused from the requirement of providing written notice no later than one year from the onset of the claimed totally disabling condition. In context, the terms of the contract to be construed deal not with the peril insured against but, rather, whether the insured should be absolved from an otherwise binding legal obligation of that contract. As such, this language must be construed as excusing the insured from providing written notice within a year of a covered disability provided that the insured demonstrates that he either had been declared incapacitated by a court of law following a thorough examination of his or her competence or, at a minimum, had otherwise met the legal standards for mental incompetence under the relevant state law, that is, New York's. This, the Court concludes as a matter of law, is the clear meaning of the subject provision of the insurance contract.

A proceeding to determine Falco's capacity would have been conducted under New York's Mental Hygiene Law. *See generally* MENTAL HYG. § 81.02 (providing that a court may appoint a guardian for a person if it determines "that the appointment is necessary to provide for the personal needs of that person, including food, clothing,, shelter, health care, or safety and/or to manage the property and financial affairs of that person"). Falco, of course, has conceded that no such proceeding was ever held in connection with any disability or incapacity he suffered. *See* Pl.'s Mem. in Opp. at 17. Even more dispositively, there is no evidence in the record suggesting that one was, in any way, appropriate, much less necessary. The record, in fact, suggests a far different story. The evidence submitted by Falco on his own motion establishes that, during the period for which he seeks the additional benefits, Falco continued to commute to

14

work, to run his business, albeit somewhat more passively than previously, and to participate actively in his divorce proceedings.[10] *See generally* Cuti Aff.; Mercogliano Aff.

Accordingly, in the absence of any record substantiation whatsoever for Falco's claim that he was "legally incapacitated" between late 1994 and May 2000, the Court finds that there is no issue of material fact as to whether Falco's undisputed failure to provide written proof of loss within 90 days of a period for which he wished to claim benefits, as otherwise required by the contract of insurance, was excusable. Simply, it is not. Falco's claim under Policy 2, therefore, fails as a matter of law.[11] *See, e.g., Caporino v. Travelers Ins. Co.*, 62 N.Y.2d 234, 239, 476 N.Y.S.2d 519, 465 N.E.2d 26 (1984)(granting summary judgment in favor of defendant insurer after noting that a court may not "disregard clear provisions which the insurers inserted in the [policy] and the insured accepted, and equitable considerations will not allow an extension of coverage beyond its fair intent and meaning in order to obviate objections which might have been foreseen and guarded against")(citing *Johnson v. Travelers Ins. Co.*, 269 N.Y. 401, 407, 199 N.E. 637 (1936) and *Breed v. Ins. Co. of North America*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978)).

Furthermore, the Court also must take note of Part 10.4 of Policy 2, which, in accordance with New York law, provides the following: "You cannot bring [legal action] after 3 years from

---

[10]This same proof vitiates as well Falco's claim of "total disability" in this time period. Even if the notice hurdles could be overcome, defendants would be entitled to summary judgment substantively on the uncontested facts in the record.

[11]The identical argument was advanced by Falco to excuse otherwise fatal defaults in his claims under Policy 1. By force of argument, the legal incapacitation parry to the asserted defense on the Policy 1 claims is equally fruitless. There is no material question of fact in dispute here either and the defense affords a separate and independent ground supporting summary judgment for defendants on those claims as well.

15

the date written proof of loss is required."[12] Because Falco was not legally incapacitated, he was required to submit such written proof of loss within a year of each monthly period[13] for which he wished to claim benefits. Falco, of course, did not even attempt to do so for any period until May 2001. Accordingly, given that Falco commenced this action on February 27, 2004, any disability claims concerning monthly periods prior to February 27, 2001 are time-barred pursuant to Part 10.4 of Policy 2 and § 3216 of the New York Insurance Law.[14] Most critically, it is undisputed that defendants have paid Falco all disability payments under Policy 2 through the entire period not barred by the statute of limitations, and beyond that to May 2000.

Taking the facts as provided by plaintiff and applying the clear meaning of the language of Policy 2, there are no genuine issues of material fact regarding Falco's failure to provide defendants timely written proof of loss of his claim. Falco's failure to do so is alone fatal as a

---

[12] Although New York law establishes a six year statute of limitations for most contract-related actions, *see* N.Y. C.P.L.R. § 213(2) (McKinney 2007), C.P.L.R. § 201 allows deviation from this standard if "a different time is prescribed by law or a shorter time is prescribed by written agreement." In the case of insurance contracts, a shorter limitations period is permissible, pursuant to § 3216 of the New York Insurance Law, which provides that insurance contracts may contain the following language (or a reasonably similar variant of such language approved by the superintendent of insurance):

> LEGAL ACTIONS: No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

N.Y. INS. LAW § 3216(d)(1)(K). Part 10.4 of Policy 2 is in compliance with this provision.

[13] *See* footnote 9, *supra*.

[14] Falco's argument that the Court should toll the three year statute of limitations because of his alleged "insanity," see Pl.'s Mem. in Opp. at 17, is untenable. First, the limitations provision in Policy 2 does not include a tolling provision, nor does § 3216 of the New York Insurance Law require one. *See, e.g.*, Swartz v. Berkshire Life Ins. Co., 2000 WL 1448627, at *7 (S.D.N.Y. Sept. 28, 2000)(court, after finding a lawsuit to be time-barred pursuant to the terms of several insurance policies, refused to consider the issue of tolling because neither the policies themselves nor the New York Insurance Law provided for tolling). Moreover, as noted above, Falco has provided no prima facie evidence of a total disability of any kind during the period 1994 to May 2000, let alone one that would rise to the level of "insanity." *See id.* at *5 (noting that "[d]epression, even if it is severe, does not rise to the level of insanity . . . "); Sanders v. Kiley, 1995 WL 77916, at *4-5 (S.D.N.Y. Feb. 23, 1995)(similarly finding that plaintiff had failed to demonstrate that a diagnosis of depression constituted insanity).

matter of law. Therefore, summary judgment for defendants is appropriate on Falco's extant claims arising out of Policy 2. The Court need not reach defendants' remaining arguments.

### III. CONCLUSION

In accord with the foregoing, the motion of defendants Unum Provident Corporation, Provident Life and Accident Insurance Company, and the Paul Revere Life Insurance Company for summary judgment on all pending claims against them in this action is granted.

Defendants are directed to enter Judgment in accordance with this Decision and Order. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:    Brooklyn, New York
           March 30, 2007

                                                  _____
                                                  Eric N. Vitaliano
                                                  United States District Judge